UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANTHONY CYRIL MARTIN,<br><br>              Plaintiff,<br><br>       v.<br><br>MARK WENTZ, *Ft. Wayne Police Dept.,*<br>*et al.,*<br><br>              Defendants. | CAUSE NO. 1:13-cv-00244-SLC |

## OPINION AND ORDER

Anthony Cyril Martin, a prisoner without a lawyer, is proceeding in this case against twelve Defendants. Martin advances: "a Fourth Amendment claim for an excessive use of force during his arrest on July 23, 2013, against Fort Wayne Police Officers Robert Hollo, Thomas Strausborger, Derrick Demorest, Chris Hoffman, Jason Fuhrman, Charles Taylor, Todd Battershell, Craig Fairchild, Sam Adams, Stephanie Souther and Angela Reed . . ." (ECF 13 at 8-9); and "a Fourth Amendment claim for an excessive use of force during his interrogation on July 23, 2013, against Fort Wayne Police Officers Mark Wentz and Todd Battershell . . ." (ECF 13 at 9). These twelve Defendants have moved for summary judgment. (ECF 143). Martin has responded. (ECF 190). Defendants have replied. (ECF 191). The summary judgment motion is fully briefed.

In the summary judgment motion, Defendants deny they used excessive force against Martin in violation of the Fourth Amendment. The motion also addresses many

claims which are not at issue in this case, including "probable cause to arrest" (ECF 144 at 7); "vehicle was not unlawfully searched" (*id*. at 9); "unlawful search, unlawful arrest, false arrest, and false imprisonment claims" (*id*. at 11); "duty to intervene" (*id*. at 14); "denied adequate medical treatment" (*id*.); "a claim for cruel and unusual punishment" (*id*. at 17); "denied his right to counsel" (*id*. at 18); "battery" (*id*.); "failure to train" (*id*. at 19); and "state law claims" (*id*. at 20).  To the extent any of these claims were raised by Martin in the amended complaint (ECF 12), they were screened pursuant to 28 U.S.C. § 1915A and dismissed (ECF 13 at 9).  Therefore it is unnecessary to address those arguments in this Opinion and Order.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.  To determine whether a genuine issue of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).  However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence [he]

2

contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit . . . ." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

The question in Fourth Amendment excessive use of force cases is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Rather, the question is "whether the totality of the circumstances" justifies the officers' actions. *Graham* at 396. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the perfect vision of hindsight. *Id*. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Id*.

In the screening order, the Court granted Martin leave to proceed on his claims that Fort Wayne Police Officers Robert Hollo, Thomas Strausborger, and Derrick DeMorest caused him to crash his vehicle into a utility pole as a result of a police pursuit on July 23, 2013. (ECF 13 at 2). Detective Hollo in his declaration acknowledges pursuing a vehicle driven by Martin on that date, but makes no mention of a collision with a utility pole or anything else. (ECF 143-2 at 2-3). He describes Martin's vehicle as "rolling pulling into the lot off Hayden Street . . . ." *Id.* at 2. Sergeant Strausborger in his declaration does not mention personally seeing the conclusion of the pursuit nor

3

seeing a collision. (ECF 143-3). He states the pursuit "ended when the suspect in the passenger seat jumped out and began running westbound." (*Id*. at 2). Officer Demorest in his declaration acknowledges pursuing Martin's vehicle. "I fell third in line, behind Detective Hollo and Officer Angela Reed, in the vehicle pursuit." (ECF 143-4 at 2). He makes no mention of a collision, but states "[t]he vehicle pursuit ended in the area of Hayden Street and Lillie Street, where the passenger . . . bailed from the suspect vehicle and ran to the west." (*Id*.).

In his declaration, Martin states, "Officer Robert Hollo, Officer Derrick DeMorest, and Sergeant Thomas Strausborger ran their vehicles into my vehicle that I was driving, colliding with me and causing me to wreck, and strike a utility pole." (ECF 190 at 3-4). Without more, these contradictory declarations would create a genuine factual dispute as to whether Defendants used excessive force to stop Martin's vehicle. However, there is more. As Defendants accurately note, where "the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (citing *Scott v. Harris*, 550 U.S. 372, 379-80 (2007)).

Defendants argue dash camera video from two police cars prove that Martin's car was not hit by any police car and that it did not hit a utility pole. However, neither dash camera captures images of Martin's car at the end of the chase. Though it does not appear that events occurred as Martin describes them, the videos are ambiguous as to whether he was forced off the road by a collision and struck a pole.

4

Nevertheless, the dash camera video of Officer Reed makes clear that Martin's version of events would not have been an excessive use of force. The relevant facts in this case are indistinguishable from *Scott* where the United States Supreme Court found the police have a legitimate interest in stopping the danger caused by a reckless, high-speed driver. 550 U.S. at 379-80. *Scott* recognized that ramming a car during a high-speed chase posed a high likelihood of serious injury or death to that driver. *Id*. at 384. *Scott* held that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Id*. at 386.

Martin's complaint did not mention that he was driving at high speeds, through residential neighborhoods, running stop signs. Dash camera video from Officer Reed's police car shows this is what happened. (*See* ECF 142, Ex. O). As such, it is no longer relevant whether these three police officers collided with Martin and forced him to hit a utility pole. Given the dangers created by Martin, such force was not excessive and did not violate the Fourth Amendment. Therefore summary judgment must be granted on these claims.

In the screening order, the Court granted Martin leave to proceed on a claim that when he exited his vehicle after the pursuit ended, Fort Wayne Police Officers Chris Hoffman, Jason Fuhrman, Charles Taylor, and Todd Battershell threw him to the ground. (ECF 13 at 2). While on the ground, Fort Wayne Police Officers Robert Hollo, Derrick DeMorest, Thomas Strausborger, Chris Hoffman, Craig Fairchild, and Sam

5

Adams kicked and punched him; Fort Wayne Police Officers Todd Battershell, Jason Fuhrman, and Charles Taylor used unnecessary pressure points; and Fort Wayne Police Officers Stephanie Souther and Angela Reed tased him several times.  (*Id.*)

In his declaration, Officer Chris Hoffman states he "had no interaction with Anthony Martin on July 23, 2013."  (ECF 143-13 at 1).  Officer Jason Fuhrman states in his declaration that he "had no interaction with Anthony Martin on July 23, 2013."  (ECF 143-11 at 1).  Sergeant Charles Taylor explains in his declaration that he was not present when Martin was apprehended, but he saw Martin shortly thereafter while speaking to witnesses to see if they could identify Martin as having been involved in a gas station robbery.  (ECF 143-5 at 1-3).  Detective Todd Battershell in his declaration makes no mention of being present when Martin was apprehended.  Detective Battershell's involvement was limited to investigative work related to the gas station robbery.  (ECF 143-6).  None of these Defendants admit to throwing Martin to the ground.  All of them deny being present when he was apprehended.

In his declaration, Martin states, "I was grabbed by Chris Hoffman, Officer Jason Fuhrman, Sergeant Charles Taylor and slammed to the ground with force hitting my right shoulder, neck, side and leg on the concrete causing me extreme pain."  (ECF 190 at 4).  Martin makes no mention of Detective Todd Battershell related to this claim in his declaration; therefore summary judgment will be granted as to Detective Battershell.  As to the other three Defendants, these contradictory declarations create a genuine factual dispute that cannot be resolved on summary judgment.

In his declaration, Detective Robert Hollo states, "I assisted with handcuffing Martin and he was placed into Detective Martin Grooms' squad car." (ECF 143-2 at 3). Officer Derrick DeMorest states in his declaration, "I observed Martin running across the yard just east of 1435 Lillie Street [and] Martin was apprehended in the area of 1420 Lillie Street." (ECF 143-4 at 2). Sergeant Thomas Strausborger states in his declaration, "Martin, ran a short distance and was taken into custody." (ECF 143-3 at 2). Officer Chris Hoffman states in his declaration that he "had no interaction with Anthony Martin on July 23, 2013." (ECF 143-13 at 1). Officer Craig Fairchild in his declaration makes no mention of being present when Martin was apprehended, but he describes transporting a witness connected to the gas station robbery. (ECF 143-9). Sergeant Sam Adams states in his declaration that he "had no interaction with Anthony Martin and [he] did not witness anyone else have interaction with Anthony Martin." (ECF 143-12 at 1). None of the Defendants admit to kicking or punching Martin.

In his declaration, Martin states, "[w]hile on the ground, Officer Hollo, Officer Demorest, Sergeant Strausborger, Officer Hoffman, Officer Fairchild, and Officer Adams began hitting, kicking, punching me with closed fists causing me pain." (ECF 190 at 4). As to these six Defendants, these contradictory declarations create a genuine factual dispute that cannot be resolved on summary judgment.

As previously discussed, Detective Todd Battershell, Officer Jason Fuhrman, and Sergeant Charles Taylor all state in their declarations that they were not present when Martin was apprehended and arrested. (ECF 143-6, 143-11 at 1, 143-5 at 1-3). None admit to using unnecessary pressure points to restrain him. In his declaration, Martin

7

states, "Officer Fuhrman and Sergeant Taylor used unnecessary excessive pressure points on me behind my ears, neck and head causing me unbearable pain." (ECF 190 at 4). Martin makes no mention of Detective Todd Battershell related to this claim in his declaration; therefore summary judgment will be granted as to Detective Battershell. As to the other two Defendants, these contradictory declarations create a genuine factual dispute that cannot be resolved on summary judgment.

In her declaration, Officer Stephanie Souther makes no mention of being present when Martin was apprehended and arrested. (ECF 143-7). She does not mention tasing him. Officer Angela Reed describes in her declaration the pursuit of Martin's vehicle, how he behaved after he stopped and exited the vehicle, and that he "took off running [and] was apprehended on Lillie by several units . . . ." (ECF 143-8 at 3). "At no time did I see any officer, including myself, deploy a taser on Anthony Martin." (*Id.*). In his declaration, Martin states, "Officer Souther and Officer Reed tased me several times . . . ." (ECF 190 at 4). These contradictory declarations create a genuine factual dispute that cannot be resolved on summary judgment.

Defendants argue the dash camera videos, which were dispositive to the vehicle pursuit claim, are also dispositive to these excessive force claims. They argue the video from Officer Reed's car shows "[a]t no point in time before Martin fled did he have any physical contact with any officer." (ECF 144 at 4; *see* Video at ECF 142, Ex. O). However, this is not true. Martin is not visible at any time in that video. Though based on the video it would be reasonable to infer that no officer had physical contact with Martin before he ran, the video does not *blatantly* contradict Martin's declaration that

8

excessive force occurred between the time he exited his vehicle and when he was placed in a police car in handcuffs.

Defendants argue the video from Officer Grooms's car shows "Martin's arrest after he flees from the scene." (ECF 144 at 4; *see* Video at ECF 142, Ex. P). Martin can be seen on this video running across the street in front of the parked police car and off screen to the left. Later he can be seen being walked back in front of the car to be searched. Then he is walked off screen to the right. The video does not capture Martin being apprehended, which happens off screen to the left. Neither does it capture what happens after Martin has been searched when he has walked off screen to the right.

Defendants argue the audio proves a taser was not deployed and that Martin did not cry out in pain either from being struck by a taser or a police officer. However, the entire foot chase is not on video, and it is unclear when Martin alleges he was allegedly assaulted by the police officers. Moreover, it is unclear where the microphones were located, whether they were turned on, what they could have recorded, or what sounds would be inherently necessary to corroborate Martin's claims. As such, the videos do not *blatantly* contradict Martin's declaration that excessive force was used against him. Construing all of the facts in the light most favorable to Martin as the non-moving party, and drawing all reasonable inferences in his favor too, Defendants have not demonstrated they are entitled to summary judgment on the excessive force claims that Chris Hoffman, Jason Fuhrman, and Charles Taylor threw Martin to the ground; that Robert Hollo, Derrick DeMorest, Thomas Strausborger, Chris Hoffman, Craig Fairchild, and Sam Adams kicked and punched him while he was on

9

the ground; that Jason Fuhrman and Charles Taylor used unnecessary pressure points on him; or that Stephanie Souther and Angela Reed tased him several times.

In the screening order, the Court explained the excessive force claims arising out of the interrogation on July 23, 2013. "Martin alleges that, while being interviewed, Officers Wentz and Battershell hit him in the head. He alleges that Officer Wentz choked him." (ECF 13 at 4). Detective Mark Wentz describes in his declaration his interview of Martin. (ECF 143-1 at 6-8). Detective Todd Battershell in his declaration makes no mention of being present when Martin was interrogated. Detective Battershell's involvement was limited to investigative work related to the gas station robbery. (ECF 143-6). Neither of these Defendants admit to hitting or choking Martin during the interrogation.

In his declaration, Martin states, "I was moved to several holding cells in the police headquarters, which I was hit in my head and choked by Detective Wentz . . . ." (ECF 190 at 5). Martin makes no mention of Detective Todd Battershell related to this claim in his declaration; therefore summary judgment will be granted as to Detective Battershell. As to Detective Wentz, these contradictory declarations create a genuine factual dispute that cannot be resolved on summary judgment.

Defendants argue the video of Martin's interrogation proves Detective Wentz did not hit or choke him. (*See* ECF 142, Ex. Q). It is true that in this video Detective Wentz does not hit or choke Martin; however, Martin declared under penalty of perjury that he was "moved to several holding cells . . . ." (ECF 190 at 5). Therefore video from one cell does not *blatantly* contradict Martin's description. Construing all of the facts in

the light most favorable to Martin as the non-moving party, and drawing all reasonable inferences in his favor too, Detective Wentz has not demonstrated that he is entitled to summary judgment on the excessive force claims that he choked and hit Martin in the head.

For these reasons, the Court:

(1) GRANTS the summary judgment motion (ECF 143) in regard to the claim that Fort Wayne Police Officers Robert Hollo, Thomas Strausborger, and Derrick DeMorest caused Anthony Cyril Martin to crash his vehicle into a utility pole as a result of a police pursuit on July 23, 2013;

(2) GRANTS the summary judgment motion (ECF 143) in regard to the claim that Fort Wayne Police Officer Todd Battershell threw Anthony Cyril Martin to the ground on July 23, 2013;

(3) GRANTS the summary judgment motion (ECF 143) in regard to the claim that Fort Wayne Police Officer Todd Battershell hit Anthony Cyril Martin in the head and choked him during his interrogation on July 23, 2013;

(4) DISMISSES Todd Battershell;

(5) DENIES the summary judgment motion (ECF 143) in regard to the claim that Fort Wayne Police Officers Chris Hoffman, Jason Fuhrman, and Charles Taylor threw Anthony Cyril Martin to the ground during his arrest on July 23, 2013;

(6) DENIES the summary judgment motion (ECF 143) in regard to the claim that Fort Wayne Police Officers Robert Hollo, Derrick DeMorest, Thomas Strausborger,

Chris Hoffman, Craig Fairchild, and Sam Adams kicked and punched Anthony Cyril Martin while he was on the ground during his arrest on July 23, 2013;

(7) DENIES the summary judgment motion (ECF 143) in regard to the claim that Fort Wayne Police Officers Jason Fuhrman and Charles Taylor used unnecessary pressure points on Anthony Cyril Martin during his arrest on July 23, 2013;

(8) DENIES the summary judgment motion (ECF 143) in regard to the claim that Fort Wayne Police Officers Stephanie Souther and Angela Reed tased Anthony Cyril Martin several times during his arrest on July 23, 2013; and

(9) DENIES the summary judgment motion (ECF 143) in regard to the claim that Fort Wayne Police Officer Mark Wentz choked and hit Martin in the head at the Fort Wayne Police Station on July 23, 2013.

This case will be set for a scheduling conference via separate entry.

SO ORDERED.

Entered this 21st day of August 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge